# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ANDERSON LEE FERNANDERS,

    Plaintiff,

v.                                                      Case No. 12-11752

MICHIGAN DEPARTMENT OF MILITARY
AND VETERANS AFFAIRS and MICHIGAN
YOUTH CHALLENGE ACADEMY,

    Defendants.
                                              /

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DIRECTING DEFENDANTS TO SUBMIT SUPPLEMENTAL BRIEFING

On April 19, 2012, *pro se* Plaintiff Anderson Fernanders sued Defendants, the Michigan Department of Military and Veterans Affairs and the Michigan Youth Challenge Academy, on various claims relating to his employment discharge from the Michigan Youth Challenge Academy. On December 6, 2012, the court granted Defendants' motion to dismiss on all counts but one: Plaintiff's Title VII claim for wrongful discharge and termination. Defendants moved for summary judgment. The matter is fully briefed, and no hearing is needed. *See* E.D. Mich. LR 7.1(f)(2).

Filings by *pro se* litigants are "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). *Pro se* pleadings must also be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). When construed liberally, Plaintiff's complaint seeks Title VII relief under both a "single motive" theory, *see* 49 U.S.C. § 2000e-2(a)(1), as well as under a "mixed motive" theory, *see* 49 U.S.C. § 2000e-2(m). Defendants' motion for summary judgment will be

granted with respect to Plaintiff's single motive Title VII claim. Because Defendants did not address a mixed motive theory in their motion, the court will direct Defendants to file supplemental briefing addressing that theory.

## I. BACKGROUND

The Department of Military and Veterans Affairs (the"Department") hired Plaintiff on September 8, 2010 for a limited-term appointment. (Dkt. # 9 at Pg ID 115.) Plaintiff worked as a Youth Cadre Aide, essentially a youth counselor, for the Department's Michigan Youth Challenge Academy (the "Academy"). (*Id.*) The Academy is a residential program for high school dropouts that seeks to improve their lives and make them productive citizens. The Academy cultivates a quasi-military environment and requires Youth Cadre Aides to wear military-style uniforms and comply with military-like procedures. When he was hired, Defendants knew that Plaintiff lacked military experience. (Dkt. # 33 at Pg ID 555 ¶ 5-7.) At the time he was hired, Plaintiff was the only Youth Cadre who lacked military experience. (*Id.* at Pg ID 567 ¶ 3-6.)

Plaintiff struggled in the Academy environment. His supervising officer noted that Plaintiff "had difficulty understanding military protocols," (Dkt. # 33 at Pg ID 555 ¶ 9), "would take actions without obtaining the proper authority," (*id.* at ¶ 10), "had difficulty establishing a command presence with the youth," (*id.* at ¶ 11), and, unlike his fellow cadres, "used a style that was more casual or 'laid back'" when commanding students, (*Id.* at ¶ 14). Overall, Plaintiff's supervising officer concluded that he "appeared to have difficulty controlling the youth under his command." (*Id.* at Pg ID 556 ¶ 17.)

Plaintiff was involved in two incidents which negatively reflected on his job performance. Although Plaintiff was allowed to form a basketball team at the Academy,

(*id.* at ¶ 19), he did not receive permission to take the team off site for games, (*id.* at ¶ 22), but did so anyway, (*id.* at ¶ 23). Plaintiff asserts that he believed he had permission to take the team off site at the time. (Dkt # 36 at Pg ID 647.) After the incident, Plaintiff was instructed to disband the team. (*Id.* at Pg ID 638.) In the second incident, Plaintiff was charged with supervising a movie night, and allowed a movie with "inappropriate scenes of sexual content" to be shown. (Dkt # 33 at Pg ID 557 ¶ 32.)

Plaintiff's employment with the Department was temporary—it was scheduled to expire "on 12/31/2010 or sooner with notice." (Dkt. # 9-2 at Pg ID 137.) Defendants terminated Plaintiff on December 10, 2010, two weeks before his limited-term appointment was set to expire.[1] Plaintiff's superiors concluded that he "lacked the military skills needed to function effectively in the position." (Dkt. # 9 at Pg ID 138.) After Plaintiff's termination, Defendants hired white employees. (Dkt. # 31 at Pg ID 511.) Plaintiff filed a complaint with the Michigan Department of Civil Rights and the Equal Employment Opportunity Commission ("EEOC") alleging that he was terminated because he is black. (Dkt. # 9 at Pg ID 116.) The Department of Civil Rights dismissed the complaint for insufficient evidence. (*Id.*) The EEOC adopted that same finding and provided Plaintiff a Right-to-Sue letter. (*Id.*)

## II. STANDARD

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

---

[1] Plaintiff's commanding officer explained in an affidavit that "Mr. Fernanders' limited term appointment was shortened because there was concern that once he knew he was not staying on, he might not be willing to keep discipline among the youth." (Dkt. # 33 at Pg ID 558 ¶ 40.)

"Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252, ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . ."). A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of a claim or defense advanced by either party. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a manner most favorable to the nonmoving party. *Dunigan v. Noble,* 390 F.3d 486, 492 (6th Cir. 2004) ("We must determine not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.") (internal citations and quotation marks omitted). The court does not weigh the evidence to determine the truth of the matter,

4

but must determine if the evidence produced creates a genuine issue for trial. *Sagan v. United States,* 342 F.3d 493, 497 (6th Cir. 2003).

### III. DISCUSSION

Discrimination claims brought pursuant to Title VII are traditionally categorized as either single motive claims, *i.e.*, where an illegitimate reason motivated an employment decision, or mixed motive claims, *i.e.*, where both legitimate and illegitimate reasons motivated the employer's decision. *Wright v. Murray Guard*, 455 F.3d 702, 711 (6th Cir. 2006).

### A. Single Motive Discrimination Claim

Under Title VII, it is unlawful to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.§ 2000e-2(a)(1). Absent direct evidence of race discrimination, the court applies the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), as modified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-54 (1981). *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). Under the *McDonnell Douglas* framework, to survive summary judgment:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine*, 450 U.S. at 252-53 (citations omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253.

To establish a *prima facie* case of single motive discrimination, an employee must prove that he: 1) is a member of a protected class, 2) is qualified for the job, 3) suffered an adverse employment action, and 4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *Newman v. Federal Exp. Corp.* 266 F.3d 401, 406 (6th Cir. 2001). Under step four, "[a] plaintiff must show that the defendant treated differently employees who were similarly situated but were not members of the protected class." *Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003). In order to be comparable for purposes of Plaintiff's *prima facie* case, employees must be "similarly situated in all *relevant* respects." *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 573 (6th Cir. 2006) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Accordingly, "the plaintiff must prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of the . . . employees who he alleges were treated more favorably." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994). Therefore, the court looks to "those factors relevant to the factual context." *Jackson v. FedEx Corporate Servs., Inc.*, 518 F.3d 388, 394 (6th Cir. 2008) (citing *Pierce*, 40 F.3d at 802).

Plaintiff points to two incidents to argue that similarly situated non-minority employees were treated differently; that an employee lacking military experience was hired to be the Departmental Manager, and that Plaintiff's basketball team was required to disband during his tenure at the Academy. In both instances, Plaintiff compares

6

himself to those with whom he is not similarly situated.  As a result, Plaintiff's comparisons are not indicative of discrimination.

### 1.  The First Incident

Plaintiff notes that a white person lacking military experience, Mr. Ben Wallace, was hired as the Departmental Manager at the Academy.  (Dkt. # 36 at Pg ID 639.)  However, Ben Wallace was hired to work in a different position than Plaintiff: the Department Manager position "did not require military experience."  (*Id.*)  Plaintiff's position was one where military experience was considered strongly desirable.  In fact, subsequent to Plaintiff's discharge, the Department changed the job specification for the Youth Cadre position to make military experience a perquisite.  (Dkt # 33 at Pg ID 560.)  As the Departmental Manager position is different than the Youth Cadre Aide position, Mr. Wallace was not similarly situated to Plaintiff, and a comparison of their employment situations is not legally significant.

### 2.  The Second Incident

Plaintiff also alleges that white employees at the Academy received more favorable treatment than black employees.  In addition to Plaintiff, two other Youth Cadres, both white, coached sports teams; Mr. Czerniak coached a cross-country and weightlifting team, while Mr. Hoaglin coached a volleyball team.  (Dkt. # 36 at Pg ID 638.)  Plaintiff asserts that "two white employees continued coaching their respective sports teams after Plaintiff was ordered to disband the basketball team."  (*Id.* at Pg ID 639.)  However, Plaintiff fails to demonstrate that Czerniak and Hoaglin were similarly situated to himself.  Plaintiff admits taking the basketball team off site without approval of the Master Sergent, (*id.* at Pg ID 646), and that the team was disbanded only after this

incident, (*id.* at Pg ID 638). In order to be similarly situated, one of the white coaches would have to have made mistakes comparable to those of Plaintiff. Plaintiff fails to demonstrate any infractions committed by Czerniak or Hoaglin. A reasonable trier of fact could not conclude, based on the available record, that the basketball team was disbanded because of Plaintiff's race.[2] As a result, Plaintiff cannot establish that the forced disbanding of the basketball team was racially motivated, or that he was treated less favorably than Czerniak or Hoaglin.

Plaintiff cannot demonstrate that he was treated less favorably than similarly situated non-minority employees, and he therefore fails to establish a *prima facie* case for his single motive discrimination claim. Accordingly, Defendants' motion for summary judgment will be granted.

### B. Mixed Motive Discrimination Claim

Under Title VII, "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). When analyzing a mixed-motive claim, the *McDonnell Douglas* framework does not apply. *White*, 533 F.3d at 400. Instead, "a Title VII plaintiff asserting a mixed-motive claim need only produce evidence sufficient to convince a jury that: [1)] the defendant took an adverse employment action against the

---

[2] Had Plaintiff been able to demonstrate that Czerniak or Hoaglin violated equivalently serious Academy rules and had still not had their teams disbanded, Plaintiff would likely have been able to demonstrate disparate treatment of two similarly situated employees, with the minority employee being treated less favorably.

plaintiff; and [2)] race, color, religion, sex, or national origin was *a* motivating factor for the defendant's adverse employment action." *Id.* (internal quotation marks omitted).

Plaintiff has not expressly indicated that he is pursuing a theory of mixed-motive discrimination. However, such "treatment can be triggered . . . impliedly through the use of the motivating factor test in the complaint and responsive pleadings." *Ondricko v. MGM Grand Detroit*, 689 F.3d 642, 649 (6th Cir. 2012). Plaintiff has articulated the general framework of a mixed motive claim in his amended complaint, (Dkt # 8 at Pg ID 22), as well as in his response to this motion, (Dkt # 36 at Pg ID 635). Plaintiff has therefore triggered a mixed motive analysis.

Defendants move for summary judgment only in regards to a claim of single motive discrimination. Accordingly, Defendants must file supplemental briefs for the court to consider whether granting summary judgment, with respect to the mixed motive claim, is warranted in this case.

### IV. CONCLUSION

Accordingly, IT IS ORDERED that Defendants motion for summary judgment [Dkt. # 33] is GRANTED. By **September 10, 2013**, Defendants are DIRECTED to file a supplementary brief to demonstrate why summary judgment should be granted in their favor for Plaintiff's discrimination claims arising under 42 U.S.C. § 2000e-2(m). Plaintiff shall file any response by **September 24, 2013.**

      s/Robert H. Cleland
     ROBERT H. CLELAND
     UNITED STATES DISTRICT JUDGE

Dated: August 28, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 28, 2013, by electronic and/or ordinary mail.

                                          s/Holly Monda for Lisa Wagner
                                          Case Manager and Deputy Clerk
                                          (313) 234-5522